# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Cause No. 1:11-cr-0082-TWP-KPF-2 |
| | ) | |
| MACARIO ORTIZ-LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO SUPPRESS

This cause is before the Court on Defendant Macario Ortiz-Lopez ("Ortiz-Lopez") Motion to Suppress (Dkt. 57). Specifically, Ortiz-Lopez seeks to suppress any and all evidence and statements allegedly made and obtained following a traffic stop and arrest on April 6, 2011. The Court held a hearing on Ortiz-Lopez' Motion to Suppress on July 22, 2011 and August 9, 2011. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions of law. For the reasons set forth herein, Ortiz-Lopez' Motion to Suppress (Dkt. 57) is **DENIED**.

### I. BACKGROUND

FBI task force officers (Officers) received a tip that the manager of a commercial auto shop would be receiving a tractor-trailer of cocaine on the evening of April 5, 2011. Officers conducted surveillance on the commercial auto shop located at the corner of South Keystone Avenue and Raymond Street in Indianapolis, Indiana. Officers observed what they believed to be someone using a torch to cut the front bottom end of a tractor trailer and later using a trowel and bondo putty to seal the same area. From their observations, Officers believed the tractor-trailer was being altered to conceal drugs. At approximately 1:00 a.m. on April 6, 2011, Officers

observed the tractor-trailer exit the auto lot and followed the tractor-trailer to I-465 West, where it was pulled over. Officers also observed a Dodge Dakota pick-up truck exit the lot the same time as the tractor-trailer, from the Keystone Avenue location. The Dodge Dakota was followed to I- 465 East.

IMPD officer Wildauer ("Wildauer") pulled the pick-up over after he observed the driver commit two traffic violations; exceeding the speed limit and failure to signal a lane change. At the time he made the stop, Wildauer was familiar with the events that had been observed by his fellow officers at the auto shop. After stopping the pick-up, Wildauer asked the driver to show his driver's license. Ortiz-Lopez was the driver and he responded to the officer's command and displayed his driver's license. Following the traffic stop, Wildauer was made aware that a narcotics detector dog had alerted on the tractor-trailer that had left the auto shop at the time Ortiz-Lopez left. Wildauer called a drug canine to the scene and the dog alerted on the pick-up truck, but no drugs were found.

Ortiz-Lopez was stopped at approximately 1:25 a.m. on April 6, 2011 and the dog alerted to his pick-up at approximately 2:14 a.m. Ortiz-Lopez was then placed in the front seat of a police cruiser so that the pick-up could be transported to the police garage. Wildauer continued to communicate in the English language with Ortiz-Lopez and Wildauer had no difficulties understanding what Ortiz-Lopez said and he believed Ortiz-Lopez understood him. Wildauer informed Mr. Ortiz-Lopez of his Miranda rights in the English language at 2:33 a.m.

To ensure that Ortiz-Lopez understood his Miranda rights, Officer Daniel Slightom ("Slightom") was called to the garage specifically to render Miranda warning in Spanish. At approximately 3:17 a.m., Ortiz-Lopez was informed of his Miranda warnings again, this time in Spanish, by Slightom. Because Slightom is not fluid in Spanish, he read the Spanish Miranda

rights from a translation form. He asked Ortiz-Lopez whether he understand his rights, and Ortiz-Lopez responded "si".

Shortly after 5:00 a.m., Federal Task Force Officer Ryan Clark ("Clark") questioned Ortiz-Lopez in English and conducted a somewhat detailed and conversational interrogation. Near the end of the interrogation, Clark asked if he had seen the tractor-trailer at the Keystone location and Ortiz-Lopez responded "No, I know nothing". Believing Ortiz-Lopez was not being truthful, Clark place Ortiz-Lopez under arrest for making a false statement to a federal law enforcement officer.

Ortiz-Lopez testified that he does not speak English very well. He is a citizen of Mexico with residency status in the United States, has lived in the United States for many years. He resides in a California community which is mostly Hispanic and where Spanish is spoken. When his rights were read to him in English, he "figured" that Officer Wildauer was "reading him his rights, but he did not understand them terribly well". Ortiz-Lopez does not remember being mirandized in Spanish.

## II. DISCUSSION

Ortiz-Lopez asserts that the traffic stop and his arrest were unreasonable and unlawful as officers did not have probable cause to stop his vehicle, officers did not have a reasonable suspicion to detain him in order to run a dog around his vehicle and he did not knowingly and voluntarily waive his Miranda rights. The Court will address each of these allegations in turn.

### A. Validity of Ortiz-Lopez' Traffic Stop and Arrest

At the hearing on the Motion to Suppress, Ortiz-Lopez asserted that the initial stop of his vehicle was pretextual and officers did not have probable cause to stop his vehicle and detain him. However, the facts presented before this Court indicate that this was not the case. "Officers

3

have probable cause if, based on the facts known to them at the time of the arrest, a prudent person would be warranted into believing that the suspect has committed an offense." *Smith v. Gomez*, 550 F.3d 613, 618 (7th Cir. 2008).

Wildauer followed the pick-up truck for 5 or 6 miles and witnessed Ortiz-Lopez exceeding the speed limit and changing lanes without using his turn signal. Both speeding and making a lane change without signaling are violations of Indiana's traffic codes and constitute legitimate grounds for stopping the pick-up truck. The Court, therefore, finds the initial traffic stop to be valid.

    B.    <u>Detainment of Ortiz-Lopez Person</u>

The Court must determine whether Wildauer had reasonable and articuable suspicion of criminal activity sufficient to detain Ortiz-Lopez once the officer made the traffic stop. (See *Terry v Ohio*, 392 U.S. 1(1968). In making the stop, Wildauer was familiar with the events that had occurred at the auto shop and shortly after the stop the officer was aware that a canine dog had indicated on the tractor-trailer that had exited the auto shop at the same time as the pick-up truck. When determining whether a police officer had reasonable suspicion to stop or further detain an individual, "the district court must evaluate the 'totality of the circumstances' to assess whether the determining officer has a 'particularized and objective basis' for suspecting illegal activity." *United States v. Zambrana,* 428 F.3d 670, 675 (7th Cir. 2005).

In evaluating the reasonableness of an investigatory *Terry* stop, a court must first examine whether the officer's action was justified at its inception; the court must then determine whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *see Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Here, Officer Wildauer's initial stop was clearly justified. While Officer

4

Wildauer could have relied simply on the events that were observed at the lot, Ortiz-Lopez provided independent cause to effect a traffic stop when he was observed speeding beyond the posted limit. The Court has found that Wildauer's traffic stop was justified at its inception. Within a minute or two of initiating the traffic stop at approximately 1:25 a.m., Wildauer was aware of the dog alert to the tractor trailer, which occurred at roughly the same time (approximately 1:25 a.m., per Officer Ball's dash camera recording). Further, Wildauer observed a substance which appeared to be Bondo putty on Ortiz-Lopez clothing. Wildauer had enough information to form a reasonable suspicion and make the determination to extend his stop by calling a canine unit

This action, calling for a canine to check Ortiz-Lopez' vehicle, was a reasonable extension of the traffic stop. *Terry* stops are permissible so long as they are supported by reasonable and articuable suspicion that the suspect has committed a crime or is about to do so. *United States v. Grog,* 534 F.3d 807, 810 (7th Cir. 2008). "Reasonable suspicion is more than a hunch but less than probable cause and considerably less than preponderance of the evidence. It requires some minimal level of objective justification for making a stop given the totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Jewett v. Anders,* 521 F.3d at 823. Moreover, a court's determination of reasonable suspicion must be based on common-sensical judgments and inferences about human behavior. *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005).

Defense counsel next argues that the degree of intrusion was not reasonably related in scope to the situation at hand, based upon the length of detention while waiting on the canine unit. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. . . ."; se*e also Knowles v. Iowa*, 525 U.S. 113 (1998). The

5

evidence before the Court, however, is that the Officers acted diligently to obtain a canine unit. Wildauer called for a narcotics detector dog within 10 minutes of his traffic stop, however attempts to locate a district canine unit were unsuccessful. Officer Ball and his dog Josie were at the site of the stop and search of the co-defendant, Mr. Munoz-Cardenas. Ortiz-Lopez' detainment for approximately 40 minutes is not unreasonable considering only 30 minutes were spent waiting for the canine unit to complete their service at the other scene and to arrive at Ortiz- Lopez' location.

Here, the totality of the circumstances give rise to a reasonable and articuable suspicion that Mr. Ortiz-Lopez was engaged in illegal activity. Officer Wildauer therefore had a sufficient basis to detain the defendant and request that a canine unit come to the scene. The Court finds the length of Ortiz-Lopez' detention, pending the search of the vehicle, was not unreasonable.

      C.      <u>Knowing and Voluntary Waiver of Ortiz-Lopez' Miranda Rights</u>

In addition to challenging the validity of the stop and the detention, Ortiz-Lopez also asserts that he did not knowingly or voluntarily waive his Miranda rights. Unless a suspect knowingly, voluntarily, and intelligently waives his *Miranda* rights, a court must exclude statements made as a result of an involuntary waiver. *Pennsylvania v.* Muniz, 496 U.S. 582, 589 (1990). The Supreme Court explained in *Moran v. Burbine*, 475 U.S. 412, 421 (1986):

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

The burden of proof of the voluntariness of the waiver is on the government by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Following the canine alert on the pick-up that was driven by Ortiz-Lopez, Wildauer gave Ortiz-Lopez his Miranda warnings in the English language and Ortiz-Lopez indicated in English, that he understood those warnings. The two men had previously engaged in some conversation in English; Wildauer had requested and Ortiz-Lopez had presented his identification and drivers license, they had discussed where Ortiz-Lopez was from, why he was in Indianapolis, where he was staying and working, and Ortiz-Lopez had responded appropriately in English. Wildauer testified that he had no difficulties understanding Ortiz-Lopez when he spoke English and Ortiz-Lopez appeared to have no problems understanding the officer.

Ortiz-Lopez was additionally given his Miranda warnings in Spanish by Officer Slightom. Because Slightom is not fluent in Spanish, he read the Spanish Miranda warnings using a form and afterwards, Ortiz-Lopez confirmed in Spanish that he understood those rights.

Ortiz-Lopez testified that he does not understand the English language very well, that when his rights were read to him in English, he "figured" that Officer Wildauer was "reading him his rights, but he did not understand them terribly well". He further testified that he does not remember being mirandized in Spanish.

Ortiz-Lopez' claim that he did not understand the Miranda warnings due to language barriers, is not credible. The district court is uniquely situated to make credibility determinations of the witnesses who appear before it . *See, United States v. Vallar*, 635 F.3d271 (7th Cir. 2011); *United States v. Whited*, 539 F.3d 693 (7th Cir. 2008) The evidence before the Court supports that defendant was informed of his *Miranda* warnings in both the English and the Spanish Language and that he was able to comprehend what was stated.

The Court must next determine whether Ortiz-Lopez knowingly and voluntarily waived his rights when he spoke with the Officers. "A waiver can be either express or implied," but can

7

never occur through 'mere silence.'" *United States v. Upton*, 512 F.3d 394, 399 (7th Cir. 2008)(citing *North Carolina v. Butler*, 441 U.S. 369, 373, 375-76 (1979)). "[A] person can act as though he has waived his rights without expressly saying so." *Id*. However, simply stating that he understands his rights, does not imply a valid waiver. *See e.g. United States v. Higareda-Santa*, 826 F. Supp. 355, (N.D. Or. 1993).

Ortiz-Lopez was not asked to sign a written *Miranda* waiver, therefore this Court must decide whether a waiver may be *inferred* by Mr. Ortiz-Lopez' conduct. To do this, this Court must examine the totality of the circumstances surrounding the interrogation. Factors that must be examined in order to determine if the waiver was knowing and voluntary include the suspect's physical condition and mental health, police coercion, interrogation length, interrogation location, use of physical punishment such as the deprivation of food or sleep, the defendant's intelligence, and the defendant's familiarity with the criminal justice system. *See e.g. Withrow v. Williams*, 507 U.S. 680, 693-94 (1993); *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973); *United States v. Labrada-Bustamante*, 428 F.3d 1252, 1259-60 (9th Cir. 2005).

Although the incriminating interrogation did not take place until almost two hours after Slightom read him his rights in Spanish, there is no evidence whatsoever of coercion or deprivation. Ortiz-Lopez did not testify that he was coerced into talking or that any inappropriate influences, or physical or mental deprivations caused him to involuntarily waive his rights. His sole claim is that he did not understand his rights because of the language barriers. The evidence before this Court is that Ortiz-Lopez had the benefit of being mirandized in both English and Spanish languages, that he responded in both English and Spanish that he understood those rights and his cooperative conduct and failure to present evidence that he was coerced or otherwise inappropriately influenced, indicates that he knowingly and voluntarily waived his rights. Based

upon the totality of the circumstances, the Court finds that Ortiz-Lopez' conduct establishes that he knowingly and intelligently waived his Miranda rights and voluntarily chose to make statements to the Officers.

### III. CONCLUSION

For the aforementioned reasons, Ortiz-Lopez' Motion to Suppress (Dkt. 57) is **DENIED**.

IT IS SO ORDERED.

Date: 8/30/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution to:

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov

Matthew P. Brookman
UNITED STATES ATTORNEY'S OFFICE - EV
Matthew.Brookman@usdoj.gov,usains.ecf-criminal@usdoj.gov

Candace C. Crouse
STRAUSS & TROY
cccrouse@strausstroy.com,tjweber@strausstroy.com

Martin S. Pinales
STRAUSS & TROY
mspinales@strausstroy.com,cccrouse@strausstroy.com,tjweber@strausstroy.com